IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MATSON V. MEAGHER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CARRIE L. MATSON, NOW KNOWN AS CARRIE L. TAYLOR, APPELLANT,

V.

MATTHEW T. MEAGHER, APPELLEE.

Filed August 24, 2021.    No. A-20-837.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Stephanie Flynn, of Stephanie Flynn Law, P.C., L.L.O., for appellant.

Eddy M. Rodell for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Carrie L. Matson, now known as Carrie L. Taylor, sought to have her minor child adopted by her husband. She filed a motion for consent to adoption, requesting the district court for Lancaster County find that the child's biological father, Matthew T. Meagher, did not have to consent to the proposed adoption. The district court denied Taylor's motion, and she appeals. Based on the reasons that follow, we affirm.

## BACKGROUND

Taylor and Meagher are the biological parents of Holland, born May 2013. Taylor and Meagher have never been married to each other, but they were in a relationship and lived together before and after Holland was born. They continued to live together until sometime in 2016.

In July 2017, a few months after Taylor started a relationship with her now husband, Taylor filed a complaint for paternity. In November the court entered a temporary order stating that both

- 1 -

parties were fit and proper persons to be awarded custody and that it was in Holland's best interests to award the parties temporary joint legal custody and Taylor physical custody of Holland subject to Meagher's parenting time. The order gave Meagher parenting time every Sunday at 12 p.m. until Wednesday at 5 p.m. The order also stated that the parties agreed that neither party should pay child support.

A trial was held in May and June 2019 to determine permanent custody. At the time of trial, Meagher was participating in the Drug Court program as a result of being charged in June 2018 with possession with intent to deliver marijuana. Before the court entered its order following trial, Meagher absconded from the Drug Court program and the court issued a warrant for his arrest. Until that time, Meagher had regularly exercised his parenting time set forth in the temporary order, with the exception of missing some time due to being in jail for Drug Court sanctions.

The court entered a second amended order of paternity in August 2019 awarding Taylor sole legal and physical custody of Holland and giving Meagher supervised parenting time once per week and indicated that no parenting time should occur if there is an active warrant for Meagher's arrest or if he is incarcerated. The court also ordered Meagher to pay $391 per month in child support.

Meagher was picked up on a warrant in September 2019. He voluntarily withdrew from Drug Court and was sentenced to 4 to 6 years' incarceration on the 2018 possession with intent to deliver marijuana charge. He was eligible for parole August 1, 2021.

In December 2019, Meagher filed a complaint for modification asking that his child support obligation be reduced due to his incarceration and that he be allowed telephone calls with Holland.

In February 2020, the court entered temporary orders modifying Meagher's child support obligation to $50 per month effective January 1, 2020, and granting him telephone visitation with Holland for no less than 15 minutes each week.

In May 2020, Taylor filed a "Motion for District Court's Consent to Adoption and Determination of Birth Father's Consent," the motion now at issue. The motion stated that her husband, Trevor L. Taylor, wanted to adopt Holland and that Meagher's consent was not necessary for the proposed adoption pursuant to Neb. Rev. Stat. § 43-104.22 (Reissue 2016). Specifically, Taylor alleged that Meagher's consent was not needed because he was not a fit, proper, and suitable custodial parent for Holland and/or he had knowledge of the child's birth and failed to provide reasonable support for Taylor or Holland.

At trial on Taylor's motion, there was conflicting testimony as to the day to day care each party provided for Holland during the time they lived together. Taylor claimed that she was the one who cared for Holland and Meagher did little to nothing to help care for her. Meagher disputed those claims, but did acknowledge that there were periods of time when he would not be home.

Meagher testified that after he moved out of Taylor's house in 2016, the parties were on good terms and were co-parenting Holland with no issues. Because there was no set parenting schedule prior to the temporary order, he would either stop by Taylor's house to see Holland or he would ask Taylor if he could spend time with Holland and they would work out the arrangements. Taylor testified that prior to the temporary custody order, Meagher had parenting time a couple times per week.

Taylor testified that under the temporary order, Meagher exercised his parenting time on a regular basis. Taylor acknowledged that Holland spent a lot of time with Meagher during the time the temporary custody order was in effect and that they had an established relationship. Taylor also claimed that when Holland would come back from visiting Meagher she would not have bathed, would have dirty clothes on, had not taken her medicine, and reported riding in the car without a car seat. Meagher disputed that Holland was not properly cared for when she was in his custody.

Meagher presented evidence of conversations he and Taylor had on the "Talking Parents" website which showed that Meagher regularly made inquiries into Holland's well-being and was the one who did the majority of the communicating, which included sharing pictures and events that happened with Holland during his parenting time. Meagher also testified that he has attended Holland's parent/teacher conferences as well as other school activities.

When Meager first went to jail after being picked up on his warrant, he tried to talk to Holland by calling Taylor's phone 8 to 12 times a day with no success. He then filed his complaint for modification in December 2019 seeking telephone visitation because he "desperately wanted to have any contact with her that [he] possibly could." Once the court entered the order allowing him weekly telephone visits, he never missed a call.

Taylor agreed that Meagher had been having his phone visits with Holland every week while he has been incarcerated, and stated that he had also sent Holland a couple letters. Taylor had concerns about the calls because Meagher did not accept that Holland was uncomfortable with the calls because she was not familiar with him anymore. Taylor claimed that Meagher did not have any contact with Holland between June 2019 and February or March 2020.

Meagher accused Taylor of coaching Holland during the telephone calls and of telling her not to talk to Meagher. He also testified that Taylor would abruptly end calls whenever Meagher would talk about seeing Holland in the future because she did not think that was appropriate to talk about.

Meagher testified that he believed he had a close, loving relationship with Holland and he wanted to continue that relationship into the future. He also testified that he has been sober since September 2018.

In regard to his financial support of Taylor and Holland, Meagher testified that he gave Taylor $3,000 for the downpayment on a house they moved into in November 2013. He also testified that he paid the monthly mortgage payment and a monthly car payment for 3 years during the time he and Taylor lived together after Holland was born. He testified that after he moved out, he continued to provide cash payments to Taylor for the mortgage and the car payments for at least a year and would also give her an additional $500. Meagher acknowledged that during this time, he was actively involved in the sale of marijuana, with the full knowledge and consent of Taylor, and this is how he provided financial support.

Taylor testified that it was Meagher's mother who provided a check for the downpayment on the house. She testified that Meagher helped pay some of the bills, but that his payments to her were sporadic and were not enough for the full monthly mortgage payments. She testified that Meagher stopped giving her money at the end of 2016 or early 2017.

Taylor's mother testified that at the end of 2016 or the beginning of 2017, she started making Taylor's mortgage payments and helping her pay other bills because she was not getting

any financial support from Meagher. Taylor's mother also testified that prior to 2017, Meagher gave Taylor money for the mortgage payments.

Taylor testified that when Holland started daycare in August 2016, Meagher had agreed to pay the daycare costs. Taylor testified that he did make some payments, but not the full amount. At some point, the daycare agreed to bill the parties separately for the days each of them brought Holland. Taylor also testified that Meagher had paid for 3 months of after school care.

Meagher testified that Taylor did not let him see Holland for about a month after Taylor filed her action for paternity and custody. Meagher testified that it was around this time that he stopped paying Taylor's bills. Meagher testified that he paid for Holland's gymnastics lessons and paid for several of Holland's birthday parties. Meagher also testified that at one time, he was paying more than his share of daycare expenses. Taylor testified that Meagher always attended Holland's birthday parties and brought a gift, but did not help in the planning or with the expenses.

Taylor testified that Meagher was behind in child support by approximately $1,900. Meagher's last two payments were for $100 each and were made in February and October 2020. Meagher explained that a good portion of his arrears is due to the fact that between September and December 2019 he was ordered to pay $391 per month in child support but he was incarcerated during that time.

On October 30, 2020, the district court entered an order concluding that the evidence did not support a finding that Meagher was not a fit, proper, and suitable custodial parent, or a finding that Meagher had knowledge of Holland's birth and failed to provide reasonable financial support for her. See § 43-104.22(2) and (3). Accordingly, the court overruled Taylor's motion for consent to adoption.

## ASSIGNMENTS OF ERROR

Although Taylor assigns four errors, we have consolidated them into two: the district court erred in (1) finding that she failed to meet her burden to prove that Meagher was not a fit, proper, and suitable custodial parent and (2) finding that she failed to meet her burden to show that Meagher had knowledge of Holland's birth and failed to provide reasonable financial support for her.

## STANDARD OF REVIEW

Appeals in adoption proceedings are reviewed by an appellate court for error appearing on the record. *Jeremiah J. v. Dakota D.*, 287 Neb. 617, 843 N.W.2d 820 (2014). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

The interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by the U.S. Supreme Court. *Id.* The foundation of Nebraska's adoption statutes is the consent of a biological parent to the termination of his or her parental rights. *Id.* In order to terminate a father's rights through an adoption procedure, the consent of the adjudicated father of a child born out of wedlock is required for the adoption to proceed unless the Nebraska court having jurisdiction over the custody of the child

determines otherwise, pursuant to § 43-104.22. *Jeremiah J. v. Dakota D., supra*. Because § 43-104.22 can effectively terminate the parental rights of a father, the exceptions under § 43-104.22 must be proved by clear and convincing evidence. *Jeremiah J. v. Dakota D., supra*.

Section 43-104.22 provides, in part:

At any hearing to determine the parental rights of an adjudicated biological father or putative biological father of a minor child born out of wedlock and whether such father's consent is required for the adoption of such child, the court shall receive evidence with regard to the actual paternity of the child and whether such father is a fit, proper, and suitable custodial parent for the child. The court shall determine that such father's consent is not required for a valid adoption of the child upon a finding of one or more of the following:

. . . .

(2) The father is not a fit, proper, and suitable custodial parent for the child;

(3) The father had knowledge of the child's birth and failed to provide reasonable financial support for the mother or child.


*Fit, Proper, and Suitable Custodial Parent.*

Taylor first assigns that Meagher's consent to the proposed adoption by her husband is not required because Meagher is not a fit, proper, and suitable custodial parent for Holland. See § 43-104.22(2). In *Jeremiah J. v. Dakota D., supra*, the court acknowledged that it had never defined "fit, proper, and suitable" in the context of § 43-104.22. It recognized, however, that it had defined parental unfitness in the context of termination of parental rights cases as a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in childrearing and which caused, or probably will result in, detriment to a child's well-being. *Jeremiah J. v. Dakota D., supra*. The court therefore, approved of using the definition of unfitness used in a termination case in determining whether a parent is "fit, proper, and suitable" in a consent to adoption case.

Taylor contends that Meagher is not a fit, proper, and suitable custodial parent for several reasons. She argues that his contact with Holland was sporadic before the temporary custody order was entered. She also argues that he had the opportunity to complete the Drug Court program for his 2018 conviction, which would have allowed him to spend time with Holland, but instead he left the program. Prior to leaving the program, he had no contact with Holland for about 3 months in 2019 when there was an outstanding warrant for his arrest. Since being picked up on his warrant in September 2019, Meagher has only had phone calls with Holland because he is incarcerated. Taylor also notes Meagher has a criminal history involving drugs and alcohol and previously sold marijuana as his source of income.

As Taylor points out, Meagher's involvement in Holland's life has varied over the years, which can be attributed in part to his conviction for selling marijuana. However, we cannot conclude that the evidence supports a finding that Meagher is unfit to parent Holland by clear and convincing evidence under § 43-104.22(2).

The evidence at trial showed that Taylor, Meagher, and Holland all lived together as a family from the time Holland was born in May 2013 until sometime in 2016. There was conflicting

evidence as to how much day-to-day care Meagher provided Holland during that time. However, it is clear that he was a constant presence in her life.

When Meagher moved out in 2016, the parties did not have an established parenting schedule for Holland, but Meagher would see Holland on a regular basis; he had parenting time about twice a week. Following the entry of the temporary order in September 2017, Meagher had parenting time with Holland every week from Sunday at 12 p.m. to Wednesday at 5 p.m. This schedule continued until June 2019, for almost 2 years, and he regularly exercised his parenting time. There was about a 3-month period of time in 2019 where Meagher was "on the run" and did not have contact with Holland. However, after he was picked up on his warrant he tried to contact Holland, but was unsuccessful. He then filed his complaint for modification in December 2019 seeking telephone visitation because he "desperately wanted to have any contact with her that [he] possibly could."

Since February 2020 Meagher has had weekly telephone contact with her and does not miss these calls. He wants to maintain his relationship with Holland, despite his incarceration. Meagher testified that he believed he had a close, loving relationship with Holland and he wanted to continue that relationship into the future. He also testified that he has been sober since September 2018.

The evidence showed that Meagher spent time with Holland from the time she was born and his continued involvement with her, albeit from prison, shows that he wants to be part of her life and that he loves her and cares about her. And although Meagher is in prison for selling marijuana after voluntarily withdrawing from the Drug Court program, these past actions in and of themselves do not reflect his ability to be a fit parent for Holland.

After considering the entire record, we agree with the district court that Taylor did not prove parental unfitness by clear and convincing evidence under § 43-104.22(2).

*Failure to Provide Reasonable Financial Support.*

Taylor next argues that Meagher's consent to the adoption is not required because he has failed to provide reasonable financial support. Section 43-104.22(3) states that consent for adoption is not required if "[t]he father had knowledge of the child's birth and failed to provide reasonable financial support for the mother or child." As previously stated, the parties lived together from the time Holland was born in May 2013 until sometime in 2016. Meagher testified that during that time, he paid for the downpayment on a house and paid cash to Taylor for monthly mortgage payments and monthly car payments. He testified that he continued to make those payments for about a year after he moved out, until about the time Taylor filed the paternity action. He also testified that he would give Taylor additional money. Taylor's mother agreed that at least during the time the parties lived together after Holland was born, Meagher gave Taylor money for the mortgage payments. Taylor also testified that Meagher helped pay some of the bills.

When the temporary custody order was entered in November 2017, the parties agreed that neither party would be required to pay child support. Accordingly, the parties each paid expenses for Holland during their respective parenting time. There was no evidence that Meagher did not properly provide for Holland, in terms of financial support, during his parenting time under the temporary order.

Meagher also testified that he paid for Holland's gymnastics lessons, several of her birthday parties, and his share of daycare expenses. Taylor agreed that he did pay some daycare expenses and also paid for 3 months of after school care.

Meagher was behind on his child support obligation at the time of trial. Meagher explained that a good portion of his arrears was due to the fact that between September and December 2019, he was ordered to pay $391 per month in child support but he was incarcerated during that time. Despite being incarcerated, he has made efforts to make payments toward his child support. He paid $100 in child support in both February and October 2020.

Meagher has provided some form of financial support for the majority of Holland's life. We agree with the district court that Taylor failed to meet her burden to establish that Meagher had knowledge of the child's birth and failed to provide reasonable financial support for Taylor or Holland.

CONCLUSION

The district court's finding that Taylor did not prove by clear and convincing evidence that Meagher's consent was not required under § 43-104.22 is supported by competent evidence. Accordingly, the decision of the district court is affirmed.

AFFIRMED.